UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA STAMBANIS,<br><br>    Plaintiff,<br><br>v.<br><br>TBWA WORLDWIDE, INC. DBA TBWA/MEDIA ARTS LAB,<br><br>    Defendant. | Case No. 19-cv-00821-TSH<br><br>**ORDER TRANSFERRING CASE TO THE CENTRAL DISTRICT OF CALIFORNIA**<br><br>Re: Dkt. No. 14 |

Plaintiff Rebecca Stambanis has sued Defendant TBWA Worldwide, Inc., which does business as TBWA/Media Arts Lab ("MAL"). First Amended Complaint ("FAC") ¶ 1, ECF No. 1, Ex. A. She alleges that in March 2016, MAL recruited her to be its Chief Strategy Officer and run global advertising for its only client, Apple. *Id*. ¶ 12. Before agreeing to work at MAL, Stambanis informed the Head of Human Resources, Karine Shahar, that her partner would need legal status to be able to live in the United States. *Id*. ¶ 14. Shahar assured her that obtaining a visa would not be a problem. Stambanis also told MAL that while she could be in the office for a few days in April, she would need to have the remainder of the month to move her family from Portland to Los Angeles for her new job. MAL said that would not be a problem either. Thinking her concerns had been addressed, Stambanis signed an offer letter dated March 11, 2016. *Id*. ¶ 17.

But both issues were problems. MAL pressured her to work full time in April and kept her so busy in Los Angeles in May and June that she was unable to move her family, instead staying in hotels and short-term housing in LA. *Id*. ¶¶ 18-21. The visa for her partner did not materialize, and MAL's lawyers began to propose work arounds that Stambanis viewed as unethical. *Id*. ¶¶ 23, 24. They also told her she should just marry her partner to resolve the visa situation. *Id*. ¶ 24.

Stambanis threatened to resign effective at the end of July 2016 due to MAL's inability to

United States District Court
Northern District of California

legitimately obtain the visa. This put MAL in a difficult situation because it needed her to get the company through the iPhone 7 launch in September and then help find her successor. *Id.* ¶ 26. MAL's relationship with Apple had deteriorated in the previous couple of years, resulting in the loss of two Chief Strategy Officers and the high-profile termination of MAL's Chief Executive Officer. *Id.* ¶ 12. Having Stambanis walk out the door at this critical time before the product launch would have further strained the relationship. *Id.* ¶ 26. To get Stambanis to immediately relocate her family from Portland to LA, stay through the end of 2016, and then work remotely for the first quarter of 2017, MAL agreed to a modified employment agreement with some additional provisions favorable to Stambanis. *Id.* ¶ 27.

But it turns out that MAL's leadership, in particular President Erika Hoholick and Creative Director Duncan Milner, were unhappy with Stambanis's demands and with the new agreement. They began excluding her from meetings and decisions. *Id.* ¶ 30. The company's leadership hired her replacement in mid-August, *id.* ¶ 32, and then on the same day as the iPhone 7 launch, Shahar and Chief Operating Officer Dave Colon accused her of bad-mouthing the company to Apple. *Id.* ¶ 33. A few days later MAL fired her. Stambanis later realized that MAL's leadership had been angry that she didn't just marry her partner to resolve the visa situation and was furious about the amended employment agreement. *Id.* ¶ 34.

Stambanis filed this lawsuit in San Francisco Superior Court, alleging 18 causes of action concerning her employment and the termination. MAL removed to federal court based on diversity jurisdiction. ECF No. 1 (notice of removal). MAL has now moved to transfer the case to the Central District of California under 28 U.S.C. § 1404(a).

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The section's purpose is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted)

Assuming the case could have been brought in the proposed transferee district, "the district court has discretion to adjudicate motions for transfer according to case-by-case consideration of

convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citations and quotation marks omitted). The Court must "weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Id*. They include: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, (8) the ease of access to sources of proof, (9) the presence of a forum selection clause, and (10) the relevant public policy of the forum state. *Id*. at 498-99.

We can take a few issues off the table. There's no dispute this action could have been brought in the Central District of California. That is where MAL does business and is its only business location in California. The state that is most familiar with the governing law and the relevant public policy of the forum state tip in neither direction because this District and the Central District of California are both in California. And there is no forum selection clause.

The remaining factors converge. The relevant witnesses are nearly all in Los Angeles County. A trial in San Francisco would be unjustifiably burdensome and expensive. "These individuals must take time out of their work and private time to travel to and from the place of trial, to live away from home and to wait around windowless corridors on call to testify. Back home, they have children to get to school, elderly parents to care for, jobs to do and lives to lead— all of which must be managed somehow or put on hold." *In re Funeral Consumers Antitrust Litigation*, No. C 05-01804 WHA, 2005 WL 2334362, *4 (N.D. Cal. Sept. 23, 2005). "Although lawyers tend to underestimate this burden, it is genuine, all the more so in a distant city. Even where a witness is an employee of a party and will be paid, the disruption is still a hard fact. The expenses of transportation, housing and meals, even if borne by a party, are nonetheless authentic outlays." *Id*.

Stambanis's arguments to the contrary misunderstand her own claims. She argues that Apple is in this District and that all of her work at MAL was for Apple, including numerous trips

to its Cupertino headquarters. She says there are several Apple employees who can testify about the quality of her work, Apple's relationship with MAL, and MAL's internal challenges. That may be true, but it's not really what this case is about according to the First Amended Complaint. Stambanis's claims relate to the promises MAL made her and her (alleged) shoddy treatment at the hands of specific people who are in the Central District of California. While Stambanis's job responsibilities involved travel to Cupertino and working with Apple employees there, the misconduct she is complaining about happened in LA.

Aside from the location of the witnesses, the relevant agreements were negotiated and executed in LA, the documentary evidence is for the most part also there, and almost everything relevant to the case happened there. None of the parties are here. Stambanis now lives in Oregon, and as noted, MAL's only California office is in LA.

There are only two factors that weigh even partially in favor keeping the case here. First, this is the venue Stambanis chose. However, "[w]here a plaintiff does not reside in the forum, the Court may afford plaintiff's choice considerably less weight." *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009). More generally, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). The Court therefore gives little deference to Stambanis's chosen venue.

Second, Apple is here, and while its employees are not the focus of this case, there will likely be a couple of third-party depositions concerning MAL's claim that Stambanis bad-mouthed it. For discovery purposes, it is equally expensive to depose Apple's witnesses no matter where the case is pending. For trial, the parties could subpoena those witnesses as a matter of right if the case remained here, but could subpoena them to attend trial in the Central District of California only after obtaining a court order made after a finding that attending trial there "would not" cause the witnesses to "incur substantial expense." Fed. R. Civ. Proc. 45(c)(1)(A) & (B)(ii). However, this consideration is not enough to justify keeping the case here when nearly every other factor counsels in favor of transfer. The testimony of Apple's witnesses can be presented at trial by

4

videotaped deposition in the Central District of California, which is also how that testimony would most likely be presented at a trial in this District. And as noted, the Central District could order their personal attendance at trial if the requirements of Rule 45(c)(1)(B)(ii) were satisfied.

MAL's motion to transfer is **GRANTED**. The Court **ORDERS** this case transferred to the Central District of California.

**IT IS SO ORDERED.**

Dated: May 3, 2019

THOMAS S. HIXSON
United States Magistrate Judge